WILSON, ELSER, MOSKOWITZ,
 EDELMAN & DICKER LLP
Robert P. Lesko
200 Campus Dr.
Florham Park, NJ 07932
(973) 624-0800 ph.
robert.lesko@wilsonelser.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(NEWARK DIVISION)

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, SENTINEL INSURANCE COMPANY, LIMITED and TWIN CITY FIRE INSURANCE COMPANY, | Case No. _____ |
| Plaintiffs, | **COMPLAINT** |
| vs. | |
| CALITRE LLC, SAMPSON ENTERPRISES, LLC, ERIC STOLTE and WALTER STOLTE, | |
| Defendants. | |

Plaintiffs Hartford Casualty Insurance Company, Sentinel Insurance Company, Limited and Twin City Fire Insurance Company, by and through their undersigned attorneys, as and for their Complaint against Defendants, allege as follows:

## NATURE OF ACTION

1. This is an action to recover money damages, fees and costs in connection with Defendants' scheme to avoid their obligations to pay the full premiums due and owing under certain workers' compensation and business owner's insurance policies issued by Plaintiffs.

## THE PARTIES

2. Plaintiffs Hartford Casualty Insurance Company ("Hartford Casualty") and Twin

City Fire Insurance Company ("Twin City") are corporations organized and existing pursuant to the laws of the State of Indiana which maintain their principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

3. Plaintiff Sentinel Insurance Company, Limited ("Sentinel") is a corporation organized and existing pursuant to the laws of the State of Connecticut which maintains its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155.

4. Plaintiffs Hartford Casualty, Twin City and Sentinel (collectively, "The Hartford") are member companies of The Hartford Financial Services, Group, Inc. and are engaged in the business of insurance.

5. Defendant Calitre LLC ("Calitre") is a limited liability company organized and existing pursuant to the laws of the State of New Jersey which maintains its principal place of business at 2 North Street, Suite 2C, Waldwick, New Jersey 07463. Calitre is engaged in the business of painting.

6. Defendant Sampson Enterprises, LLC ("Sampson") is a limited liability company organized and existing pursuant to the laws of the State of New Jersey which maintains its principal place of business at 35 Nautic Way, Little Egg Harbor, New Jersey 08087. Sampson is also engaged in the business of painting.

7. Upon information and belief, the individual members of Calitre and Sampson are all citizens of the State of New Jersey.

8. Defendant Eric Stolte is an individual citizen of the State of New Jersey having a residence in River Vale, New Jersey and/or Seaside Heights, New Jersey. Upon information and belief, Eric Stolte is the sole member of Calitre and the son of Walter Stolte.

9. Defendant Walter Stolte is an individual citizen of the State of New Jersey having

1307969

a residence at Hackensack, New Jersey and/or Seaside Heights, New Jersey. Upon information and belief, Walter Stolte is the sole member of Sampson and the father of Eric Stolte

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) based upon the diverse citizenship of the parties and an amount in controversy that exceeds $75,000.00 exclusive of interest and costs.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants resides in this district and because a substantial portion of the events giving rise to this action occurred in this district.

## FACTS COMMON TO ALL COUNTS

12. At the request of Calitre, The Hartford issued to Calitre that certain Workers Compensation and Employers Liability Insurance Policy No. 13 WBC BK2944 for the period of February 10, 2015 to February 10, 2016 (the "WBC Policy").

13. At the request of Calitre, The Hartford also issued to Calitre that certain Business Owners Insurance Policy No. 13 SBA TC7716 for the periods of February 10, 2014 to February 10, 2015, February 10, 2015 to February 10, 2016 and February 10, 2016 to February 10, 2017, and which was cancelled effective December 27, 2016 (the "SBA Policy").

14. Pursuant to the terms and provisions of both the WBC Policy and the SBA Policy, Calitre was obligated to pay to The Hartford an initial estimated annual premium (the "Estimated Premiums") calculated and based upon various information provided by Calitre, including the amount of Calitre's payroll.

15. Both the WBC Policy and SBA Policy also require that at the end of each annual period, the Estimated Premiums would be adjusted, either up or down, based upon an audit of

Calitre's actual payroll, number of employees and applicable employee classifications. Depending on the audit, Calitre would either be entitled to a refund if the audit reveals the Estimated Premiums were set too high, or required to pay additional premiums if the audit reveals the Estimated Premiums were set too low.

16. Calitre is obligated to cooperate with the audit performed by The Hartford following the conclusion of each annual period.

17. Following the conclusion of each annual policy period in 2014 and 2015, The Hartford undertook to perform a premium audit of Calitre in connection with the WBC Policy and SBA Policy.

18. The Hartford requested a physical audit for the SBA Policy for the 2014-2015 policy period, but Eric Stolte and Calitre refused to comply with the physical audit request.

19. Therefore, The Hartford estimated Calitre's payroll for the 2014-2015 policy period based upon information obtained from other sources, including an IRS Form 1099-MISC issued by Sampson to Calitre, suggesting that Calitre leased significant employee labor to Sampson.

20. The IRS Form 1099-MISC issued by Sampson to Calitre was obtained by The Hartford in connection with the audit of an insurance policy issued to Sampson. It states that for the 2014 tax year Sampson paid to Calitre $1,253,840 for employee labor purportedly leased from Calitre.

21. Meanwhile, since the inception of the WBC and SBA Policies, Eric Stolte and Calitre falsely represented to The Hartford that Calitre's payroll consisted of a single employee paid less than $40,000 per year.

22. In light of the information obtained by The Hartford concerning Calitre's actual

1307969

payroll for the applicable policy periods (*i.e.*, $1,253,480 actual vs. $40,000 estimated), The Hartford notified Calitre of premium adjustments for the WBC Policy and the SBA Policy and demanded additional premium payments in the amount of $289,862.63 as set forth in a Final Insurance Bill.

23. Sampson's purported use of leased employees from Calitre was part of a fraudulent scheme to avoid paying workers compensation premiums for such employees to The Hartford.

24. Calitre has refused and continues to refuse payment of the additional premiums owed to The Hartford.

## COUNT I
### (Breach of Contract Against Calitre)

25. Plaintiff hereby realleges and incorporates by reference all of the allegations set forth in each of the foregoing paragraphs as though fully set forth herein.

26. The WBC Policy and SBA Policy each require Calitre to pay additional premium where the premium audit reveals higher than estimated payroll for any given policy period.

27. The premium audits conducted by The Hartford reveals that Calitre had payroll higher than estimated for the policy periods ending on February 10, 2015 and February 10, 2016.

28. Accordingly, The Hartford demanded payment of additional premium for each said policy period as set forth on the Final Insurance Bill.

29. Calitre has refused to pay the additional premium.

30. Calitre's refusal to pay the additional premium is wrongful and in violation of its obligations under both the WBC Policy and SBA Policy.

31. As a result of Calitre's wrongful refusal to pay the additional premium in

1307969

violation of its contractual obligations, The Hartford has been damaged in the amount of not less than $289,862.63 plus interest, attorneys' fees, costs and expenses.

## COUNT II
### (New Jersey Workers' Compensation Fraud Act against Calitre and Eric Stolte)

32. Plaintiff hereby realleges and incorporates by reference all of the allegations set forth in each of the foregoing paragraphs as though fully set forth herein.

33. Eric Stolte and Calitre purposely and/or knowingly misrepresented the amount of Calitre's payroll in the course of obtaining the WBC Policy and the SBA Policy from The Hartford, and in connection with the subsequent annual renewals of those policies.

34. Eric Stolte and Calitre purposely and/or knowingly failed to advise The Hartford of the fact that Calitre's payroll far exceeded the estimated amount set forth in the application for the WBC Policy and SBA Policy.

35. Eric Stolte and Calitre purposely and/or knowingly misrepresented and failed to disclose the amount of Calitre's actual payroll for the purpose of evading the full payment of workers' compensation insurance premiums in violation of the New Jersey Workers' Compensation Fraud Act (N.J.S.A. 34:15-57.4).

36. As a result, The Hartford has been damaged by Calitre's and Eric Stolte's knowing misrepresentations and/or misleading statements in an amount not less than $289,862.63 plus interest, attorneys' fees costs and expenses.

## COUNT III
### (Common Law Fraud against Calitre and Eric Stolte)

37. Plaintiff hereby realleges and incorporates by reference all of the allegations set forth in each of the foregoing paragraphs as though fully set forth herein.

38. Calitre and Eric Stolte had a duty to disclose to The Hartford the true amount of

1307969

Calitre's payroll in connection with The Hartford's provision of the insurance coverages under the WBC and SBA Policies.

39. Calitre and Eric Stolte knowingly misrepresented and concealed the true amount of Calitre's payroll to The Hartford in an attempt to avoid full payment of premiums required under the WBC Policy and the SBA Policy.

40. The Hartford reasonably relied on these misrepresentations in estimating the amount of premium to be paid by Calitre.

41. Calitre and Eric Stolte attempted to conceal from the Hartford the true facts concerning Calitre's payroll by refusing to cooperate with annual premium audits as required by the WBC Policy and the SBA Policy.

42. As a result, The Hartford has been damaged by Calitre's and Stolte's fraudulent misrepresentation and concealment in an amount not less than $$289,862.63 plus interest attorneys' fees, costs and expenses.

## COUNT IV
### (Workers' Compensation Fraud against Sampson and Walter Stolte)

43. Plaintiff hereby realleges and incorporates by reference all of the allegations set forth in each of the foregoing paragraphs as though fully set forth herein.

44. Sampson and Walter Stolte purposely and/or knowingly caused Calitre and Eric Stolte to misrepresent the amount of Calitre's payroll for the purpose of evading the full payment of workers' compensation insurance premiums to The Hartford in violation of the New Jersey Workers' Compensation Fraud Act (N.J.S.A. 34:15-57.4).

45. Alternatively, Sampson and Walter Stolte made a false or misleading statement to The Hartford in connection with the workers compensation insurance policies issued to Sampson

concerning the correct amount of Sampson's payroll to the effect that Sampson did not employ its own laborers but rather leased employees from Calitre.

46. As a result, The Hartford has been damaged by the fraudulent misrepresentation and concealment of Walter Stolte and Sampson in an amount not less than $289,862.63 plus interest attorneys' fees, costs and expenses.

## COUNT V
### (Conspiracy to Commit Workers' Compensation Fraud against Calitre, Sampson, Eric Stolte and Walter Stolte)

47. Plaintiff hereby realleges and incorporates by reference all of the allegations set forth in each of the foregoing paragraphs as though fully set forth herein.

48. Eric Stolte, Walter Stolte, Calitre and Sampson conspired to purposely and/or knowingly misrepresent the amount of their respective payrolls for the purpose of evading the full payment of workers' compensation insurance premiums owed to The Hartford in violation of the New Jersey Workers' Compensation Fraud Act (N.J.S.A. 34:15-57.4).

49. As a result, The Hartford has been damaged by the fraudulent misrepresentation and concealment in an amount not less than $289,862.63 plus interest, attorneys' fees, costs and expenses.

**WHEREFORE,** Plaintiffs hereby demands that a judgment be entered against all Defendants, jointly and individually, in an amount not less than $289,862.63 plus pre-judgment interest, post-judgment interest, attorneys' fees, costs and expenses incurred by Plaintiffs, and such other, further, and different relief as the Court may deem just and proper.

1307969

DATED:	October 27, 2017

        Respectfully submitted,

        WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
        *Attorneys for Plaintiffs*

    By:   /s/Robert Lesko
        Robert Lesko
        200 Campus Drive
        Florham Park, NJ  07932-0668
        (973) 735-5779
        (973) 624-0808 (fax)
        robert.lesko@wilsonelser.com

1307969